IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| IRA BODENSTEIN, not individually but solely in his capacity as the CHAPTER 7 TRUSTEE OF ILOAD, INC.,<br><br>Plaintiff,<br><br>v.<br><br>XPO Logistics, Inc., a Delaware corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. |

**COMPLAINT AT LAW**

NOW COMES the Plaintiff IRA BODENSTEIN, not individually but solely in his capacity as Chapter 7 Trustee for the estate of Debtor iLOAD, INC., by and through his designated counsel at Robbins, Salomon & Patt, Ltd. and for this Complaint against Defendant XPO Logistics, Inc. states as follows:

**Background**

This case arises of out breach of a lease agreement between Debtor iLoad, Inc. ("iLoad") and Defendant XPO Logistics, Inc. ("XPO") related to two-year lease of more than 120 trailers and associated equipment ("Vehicles"). Defendant, as lessee under the applicable agreements, has refused to honor the two-year term of the lease agreement, failed pay for use of the Vehicles, have failed to return the Vehicles and has lost or abandoned dozens of the Vehicles that were leased by iLOAD to XPO.

## Facts Common to All Counts

### Jurisdiction and Venue

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because each party is a citizen of different States and the amount in controversy exceeds $75,000.00.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

### Parties

3. Plaintiff Ira Bodenstein, not individually but solely in his capacity as Chapter 7 trustee of the estate of Debtor-Plaintiff iLoad was appointed on August 9, 2017 (*See* Dkt. # 128, Letter of Resignation and Appointment). iLOAD is an Illinois corporation with its principal place of business located at 2118 S. Wolf Road, Des Plaines, IL 60018. Prior to filing its Chapter 7 bankruptcy case, iLOAD was in business in the transportation industry, brokering and hauling freight and renting tractor-trailers and equipment to customers in the transportation industry including, logistical support companies and motor carrier transportation service providers.

4. Defendant XPO is a Delaware corporation with its principal place of business located at 5 American Lane, Greenwich, CT 06831. XPO is in the transportation industry providing global supply-chain logistics and operations in over thirty-two (32) countries.

### iLOAD and XPO Lease Agreement

5. In and prior to 2015 iLOAD leased Vehicles to customers in the ordinary course of its business.

6.  XPO and iLOAD entered into a Master Lease Agreement dated September 15, 2015 (collectively together with the Leasing Schedule, Standard Terms and Conditions ("STC") and exhibits attached and incorporated thereto (collectively herein "MLA" or "Lease Agreement") whereunder iLoad leased the Vehicles to XPO, in the ordinary course of iLOAD's business.  A copy of the Lease Agreement between XPO and iLOAD is attached hereto as **Exhibit 1**.

7.  Pursuant to the terms of the Lease Agreement, XPO agreed to lease the Vehicles from iLOAD for a term of 24 months commencing September 15, 2015 and pay rent for use of those Vehicles in accordance with Leasing Schedule.  Exhibit 1 MLA § 2 at p. 14.

8.  The Lease Agreement provides that it "may not be terminated or cancelled for any reason whatsoever, except as expressly provided in the Lease."  Exhibit 1 STC § 3 at p. 2.

9.  Rentals for the Vehicles were billed via invoices sent to XPO, which were due upon receipt.  Exhibit 1 MLA § 6 at p. 2.  XPO agreed to pay rental charges when due, without abatement or setoff.  The Lease Agreement provided, "Lessee will not be entitled to any abatement of, reduction of, or setoff against Lease Payments for any reason whatsoever."  Exhibit 1 STC § 4 p. 2.

10. Pursuant to the Lease Agreement Lease Payment Schedule, XPO promised to pay iLOAD $420.00 per month for each of the Vehicles leased by XPO during the term of the Lease Agreement.  *See* Exhibit 1 MLA Leasing Schedule at p. 13.

11. XPO's obligation to make lease payments continued until iLOAD's Vehicles were returned to iLOAD.  Specifically, the Lease Agreement provided, "In the event that ILOAD

does not elect to take action under either Section 3(a) or Section 3(b) above, the Lessee's responsibilities under the Lease, including the payment of Use Charges, will continue until all of the Equipment is returned to ILOAD." Exhibit 1 STC § 3(b) p. 2.

12. Under the Lease Agreement, XPO promised to return the Vehicles to iLOAD premises in the same condition as received (except normal wear). Specifically, Section 2 of the Standard Terms & Conditions provides:

> "Equipment will be returned to ILOAD in the same condition reported in the Rental Agreement, with the exception of Normal Wear. Unless otherwise set forth in the Lease, Lessee, at its expense, will return the Equipment to the ILOAD location from which Lessee picked up the Equipment. In the event Lessee returns the Equipment to a ILOAD location other than such location described in the foregoing sentence, a drop charge may apply; provided, that in any event ILOAD's prior written consent to return the Equipment to any such other location will be required. … Lessee will be responsible for all costs incurred by ILOAD in arranging delivery or pick-up of the Equipment to or from a non-ILOAD location."

Exhibit 1 STC § 2 at p. 1.

13. As Lessee, XPO was further obligated to keep the Vehicles free from any lien or encumbrance that might adversely affect the Vehicles and further, "agrees to keep the same free from any lien, encumbrance, right of distrains or any other claim that may be asserted by any third party." Exhibit 1 STC § 3 at p. 1.

14. The Lease Agreement further provides that XPO will incur a late charge of eighteen (18%) percent per annum (or the maximum amount permitted by Applicable law) for each lease payment that remained unpaid for ten (10) days after such payment was due. Exhibit 1 STC § 4(b) at p. 2.

15. Further, the Lease Agreement obligated XPO to repair or replace the Vehicles or otherwise compensate iLOAD if there is an Event of Loss[1] to the Vehicles. Specifically, Section 6 of the MLA's STA provides:

> 6. REPAIRS TO EQUIPMENT. … If there is an Event of Loss with respect to any Equipment, Lessee will, at the option of ILOAD, either (a) replace the same with like equipment in good repair (with no abatement of Lease Payments) and take any actions that are necessary to ensure that ILOAD acquire good title to such replacement equipment; or (b) pay to ILOAD on the Loss Payment Date the Loss Value of the Equipment; plus (i) all Lease and other payments due but unpaid through the Loss Payment Date relating to such Equipment; (ii) all labor, drayage, maintenance, mileage, road service, storage, or other charges relating to such option, of Equipment Monitoring Devices relating to such Equipment that is owned by ILOAD unless such equipment Monitoring Devices are returned to ILOAD undamaged, whereupon the Lease will terminate as to such Equipment and ILOAD will adjust the remaining Lease Payments and Loss Value accordingly.

Exhibit 1 STC § 6 at p. 4.

16. Pursuant to the Lease Agreement, XPO promised that it "will promptly provide ILOAD with the current location of each [Vehicle] leased … and/or make such [Vehicle] available for inspection by ILOAD upon ILOAD's request." Exhibit 1 STC § 5(b) at p. 3.

17. Following execution of the Lease Agreement, iLOAD began leasing the Vehicles to XPO. On information and belief, in total from September 2015 through the present, XPO leased one hundred and eighteen (118) Vehicles from iLOAD under the MLA. A copy of a spreadsheet identifying the 118 Vehicles leased by iLOAD to XPO by account number and VIN number is attached hereto as **Exhibit 2**.

---

[1] The term "Event of Loss" is defined as "the Equipment is lost, stolen, destroyed, damaged beyond repair, condemned, confiscated, seized, or requisitioned, as determined by ILOAD in its sole discretion, whether due to accident, fire, lightning, theft, explosion, flood, windstorm, mischief, vandalism, or otherwise." Exhibit 1 STC § 23 at p. 11.

- 5 -

**January 2017 Invoices and iLOAD's Demand Notice**

18. Following commencement of the Lease Agreement and XPO's leasing of iLOAD Vehicles, iLOAD began sending monthly invoices to XPO reflecting the Vehicles leased and amounts owed per vehicle.

19. On or about January 9, 2017, iLOAD issued and sent four (4) invoices to XPO's Turbo Division in Gainsville, Georgia identifying amounts due and owing for rental payments pursuant to the MLA for ninety-nine (99) Vehicles leased to XPO for the month of December 2016 for which XPO had not made payments for rent. Copies of Invoice Numbers 119, 120, 121 and 122 representing these ninety-nine (99) Vehicles leased to XPO are attached hereto as group **Exhibit 3**.

20. XPO had not paid iLOAD the Lease payments for ninety-nine (99) leased Vehicles for the month of December 2016 comprising a sum total of $41,580.00, despite being obligated to do so under the Lease Agreement.

21. On or about January 26, 2017 counsel for iLOAD sent a written notice and demand to XPO via email regarding the due and outstanding rental payments owed by Defendants for invoice nos. 119, 120, 121 and 122 under the Lease Agreement. A copy of the January 26th demand notice is attached hereto as **Exhibit 4**.

22. In its January 26th demand notice, iLOAD demanded payment of $34,020.00 for invoices 119, 120, 121 and 122 representing the undisputed amount owed by XPO for leasing iLOAD's Vehicles.

23. The failure of XPO to pay within ten (10) days of when due the December, 2016 Lease payments constitutes a default under the Lease Agreement. Exhibit 1 STC § 9(a) at p. 6.

### XPO's Pre-textual Repudiation

24. Instead of paying iLOAD, on March 21, 2017 XPO served a written notice of intent to terminate the MLA. A copy of XPO's counsel's purported termination notice is attached hereto as **Exhibit 5**. At the time XPO sent its termination notice XPO was leasing eighty-one (81) iLOAD Vehicles and had not paid all of the outstanding Lease payments for those iLOAD Vehicles.

25. XPO's purported basis for terminating the MLA was an alleged "breach of quiet enjoyment". *See* Exhibit 5.

26. However, pursuant to the MLA, it "may not be terminated or cancelled for any reason whatsoever, except as expressly provided in the Lease." Exhibit 1 STC § 3 at p. 2. The MLA does not provide that XPO can terminate the Lease on grounds of "breach of quiet enjoyment."

27. Accordingly, XPO's attempted termination of the Lease for breach of quiet enjoyment is not a right or remedy expressly afforded XPO under the MLA.

28. As set forth herein, at the time XPO purported to terminate the MLA, XPO was in Default under Section 9 of the Lease Agreement for failure to make timely Lease payments.

29. XPO's termination of the Lease Agreement was an improper repudiation of the parties' binding contract.

- 7 -

30. When XPO repudiated the MLA and breached the parties' binding contract, XPO knew or reasonably should have known that it was responsible payment of all remaining Lease payments and for the safe return of iLOAD Vehicles and Equipment.

31. When XPO repudiated the MLA and breached the parties' binding contract, XPO knew or reasonably should have known that XPO was unable to return the iLOAD Vehicles, which were, on information and belief, lost, abandoned, or improperly repossessed by third parties while in the possession and care of XPO.

32. Under the Lease Agreement XPO was obligated to return all of iLOAD's Vehicles. *See* Exhibit 1 STC § 4 at p. 2 and § 9(a)(xii) at p. 6.

33. XPO failed to return all of iLOAD's Vehicles as required under the Lease Agreement.

34. XPO's failure to exercise reasonable care in the return of all of iLOAD's Vehicles has directly and proximately damaged iLOAD and deprived iLOAD of the benefit of its bargain under the Lease Agreement.

## COUNT I
### (Breach of Contract)

35. Trustee hereby reasserts, re-alleges and incorporates by reference the allegations contained in paragraphs 1-34 of the Facts Common to All Counts and incorporates them herein by this reference as if re-alleged in full in this paragraph 35 of Count I.

36. iLOAD and XPO entered into a valid and enforceable contract as reflected in the Lease Agreement. *See* Exhibit 1.

37. iLOAD performed its obligations under the Lease Agreement.

38. XPO breached the Lease Agreement by, among other things:

    (a) failing to return all Vehicles to iLOAD;

    (b) failing to provide the requisite notice to iLOAD in connection with its Vehicles;

    (c) refusing to pay iLOAD for the leased Vehicles in a timely manner;

    (d) refusing to pay iLOAD late charges;

    (e) refusing to pay iLOAD taxes, fees and assessments when due in connection with the Vehicles;

    (f) failing to exercise reasonable care in tracking and locating iLOAD's Vehicles;

    (g) improperly terminating the Lease Agreement and failing to pay the Lease payments for the remainder of the term;

    (h) permitting the occurrence of defaults under Section 9 of MLA;

    (i) failing to abide by the notice provisions of the MLA;

    (j) repudiating the Lease Agreement on pre-textual grounds of "breach of quiet enjoyment" which was not grounds for termination provided under the MLA; and

    (k) failing to abide by the covenant of good faith and fair dealing by losing certain Vehicles; relinquishing possession and control of iLOAD Vehicles to third party's without providing iLOAD notice or consent; failing to provide iLOAD information sufficient to allow iLOAD to preserve its rights with respect to its Vehicles; and failing to return all of iLOAD's Vehicles as required under the Lease Agreement.

39. XPO's breach of the Lease Agreement has directly and proximately damaged iLOAD in an amount in excess of $75,000, with the full amount of damages to be proved by the evidence at trial in this cause.

**WHEREFORE**, Plaintiff IRA BODENSTEIN, not individually but solely in his capacity as Chapter 7 Trustee for the estate of Debtor iLOAD, INC. respectfully prays for this Court to enter judgment in Plaintiff's favor and against Defendant XPO Logistics, Inc. for Count I breach of contract and to enter the following relief:

    A.    An award for all damages afforded by law against Defendant arising from the breaches of contract as set forth herein;

    B.    An award for costs and expenses to the extent provided by law; and

    C.    Such other and further relief as the Court finds just and equitable.

Respectfully submitted,

DATED: January 10, 2019

**IRA BODENSTEIN**,
Not individually but solely as
Trustee for Debtor iLOAD, INC.

By: /s/ Parker E. Lawton
      One of Plaintiff's Attorneys

Richard H. Fimoff  (IL ARDC # 804886)
Parker E. Lawton  (IL ARDC # 6315513)
ROBBINS, SALOMON & PATT, LTD.
Attorneys for Plaintiff
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
Tel: (312) 782-9000  Fax (312) 782-6690
Email: rfimoff@rsplaw.com
       plawton@rsplaw.com